# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA,
## INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFFREY A. COVINGTON,<br><br>    **Plaintiff,**<br><br>*vs.*<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    **Defendant.** | CAUSE NO. 1:13-cv-363-SEB-DKL |

## REPORT AND RECOMMENDATION

On July 7, 2011, plaintiff Jeffery Covington applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI") under the Social Security Act, alleging that he is unable to work due to a disability that began on May 24, 2011. The claims were initially denied on November 9, 2011, and denied again upon reconsideration on February 1, 2012. Mr. Covington requested and received a hearing on August 14, 2012 before an Administrative Law Judge ("ALJ"). Mr. Covington and his wife testified at the hearing. A vocational expert also testified. Mr. Covington was represented by present counsel during the hearing. On August 29, 2012, the ALJ found that Mr. Covington was not disabled and denied his applications. Mr. Covington requested review of the ALJ's decision and the Commissioner's Appeals Council denied the request, rendering the ALJ's decision the final decision of the Commissioner for the purposes of judicial review. Mr. Covington now invokes judicial review of that decision.

The assigned district judge referred this Cause to this magistrate judge for preparation of a report and recommendation under 28 U.S.C. § 636(b)(1)(B).

**Standards of review and disability**

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do her previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are

medical conditions defined by diagnostic and criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. 20 C.F.R. § 404.1545. At the fourth step, if the applicant has the RFC to perform his past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy.

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine

4

disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

**Background**

At the time of the ALJ's decision, Mr. Covington was fifty-one years old. He testified that he lived in a house with his son and disabled wife. His son was, at the time of the hearing, twenty-one years old and his wife was sixty-two years old.

Before his alleged onset date, Mr. Covington held several jobs. He last worked as a cook at a Long John Silver's restaurant. Prior to that, he worked at a Church's Chicken restaurant. He also held positions in K-mart and Dollar General, worked as a stock person in Family Dollar, and was hired as a laborer by Gorilla Plastic and Rubber Group. Mr. Covington testified that he filed his disability claims because he was not functioning properly at his last job. Specifically, he alleges that he was unable to finish tasks and hid from customers. He attributes this behavior and inability to finish assigned tasks to several mental impairments. He claims that he is disabled due to a combination of his mental impairments, vision problems, and back pain.[1]

Medical records dating back to 2008 show that Mr. Covington has been diagnosed with various mental impairments. Between 2008 and 2012, he received periodic outpatient psychotherapy at a Veterans Affairs hospital, where he was diagnosed with major depressive disorder, mood disorder, post-traumatic stress disorder and borderline personality disorder. In July 2009, he was hospitalized at a Veterans Affairs hospital for

---

[1] Mr. Covington filed previous disability claims. In December 2008, he applied for DIB and SSI. His applications were denied initially and upon reconsideration and were finally denied in May 2011 by an ALJ after a hearing. Mr. Covington sought judicial review and this Court affirmed the Commissioner's denial.

treatment of post-traumatic-stress disorder ("PTSD"), depression, and suicidal ideation. During his hospitalization, Mr. Covington reported an attempted suicide four days prior to hospitalization. He also confirmed approximately thirty past suicide attempts and disclosed past sexual abuse, which he claims caused his PTSD. He alleged that the PTSD, combined with other life events such as giving up a child for adoption and unemployment, led to his depression. He also discussed his alcohol abuse. He was discharged after two days at the hospital and given medication to augment his antidepressant medication and to treat his paranoia.

In December 2010, Mr. Covington received a psychiatry medication management evaluation conducted by his treating physician, Dr. Harpriya Bhagar, and was diagnosed with depression, PTSD, and borderline personality disorder. During this evaluation, Mr. Covington reported having suicidal thoughts a month prior to his visit.

In October 2011, Mr. Covington had a mental status examination performed by Herbert Henry, Ph.D. Dr. Henry diagnosed him as suffering from major depressive disorder, alcohol dependency, and personality disorder. The medical-course statement recorded that Mr. Covington was not impaired to the extent that he could not perform simple, manual-labor types of duties.

In November 2011, state-agency reviewing consultant Joseph Pressner, Ph.D. completed a psychiatric review and assessment of Mr. Covington. Dr. Pressner opined that Mr. Covington had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration,

7

persistence, or pace; and no episodes of decompensation of extended duration. Dr. Pressner cited Dr. Henry's consultative exam when he opined that, regarding Mr. Covington's mental functional capacity, Mr. Covington could perform simple, unskilled tasks in a work setting that did not involve intense interactions with others. Dr. Henry's assessment was affirmed by another agency reviewing consultant, F. Kladder, Ph.D., in January 2012.

Mr. Covington's treating psychiatrist, Dr. Bhagar, and his licensed clinical social worker ("LCSW"), Richard Bower, completed a status opinion sheet on June 21, 2012. In this report, Dr. Bhagar diagnosed Mr. Covington with PTSD due to childhood trauma, depression, cannabis abuse, alcohol abuse, and borderline personality disorder. The status opinion also suggested that Mr. Covington was "not likely to attain or maintain any substantial employment." Dr. Bhagar noted no restrictions related to mental-health issues, but reiterated that Mr. Covington would not likely sustain employment. An undated Mental Residual Functional Capacity Assessment form was also completed, signed only by Mr. Bower. The assessment reported marked limitations in the following relevant functions:

> The ability to maintain attention and concentration for extended periods.
> 
> The ability to work in coordination with or proximity to others without being distracted by them.
> 
> The ability to make simple work-related decisions.
> 
> The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.
> 
> The ability to interact appropriately with the general public.

The ability to accept instructions and respond appropriately to criticism from supervisors.

The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

The ability to respond appropriately to changes in the work setting.

At the August 14, 2012 hearing, Mr. Covington testified about the extent of his impairments. He alleged that sexual abuse as a child, and later as a teenager, caused his PTSD. The sexual abuse first occurred when he was five or six years old. Another unrelated instance of sexual abuse occurred when he was a teenager. While at a children's home, a house parent molested him and another boy. It was during Mr. Covington's teenage years that the thoughts of suicide began. He testified that he attempted suicide several times, including once in 1979 when he was in the Army. As a result of that suicide attempt, Mr. Covington was sent to a psychiatric hospital ward in Frankfurt, Germany.

Mr. Covington also testified regarding his hygiene. He said that he showers only one to two times per year. When asked about the last time he showered, Mr. Covington admitted his last shower was three months prior to the hearing date. When asked about his clothing, Mr. Covington testified that he sometimes goes one whole month without changing his clothes. He suggested that he doesn't change clothes because he is afraid, but was unable to say what he was afraid of.

Regarding daily living, Mr. Covington testified that he can usually walk approximately four blocks before needing a break. He also testified that he is friendly

with his neighbors and they are usually friendly with him too. Several neighbors know about his suicidal history and keep an eye on him when he walks through the neighborhood. Usually his walks are to check on his step daughter's vacant house. He checks on the house because his step daughter lives in Michigan and there have been recent break-ins. Mr. Covington testified that he has three friends that occasionally come over his house.

In addition to the walks that Mr. Covington makes to his step-daughter's house, he occasionally makes a trip to the local scrap yard. Mr. Covington collects scrap metal and wire and takes it to the scrap yard, which he testified is located approximately a mile, or a mile and a half, from his home. Mr. Covington walks there. He uses a grocery cart to help him carry the pieces of scrap metal. He testified that he makes the trip to the scrap yard twice a month, at most, and makes approximately five dollars.

Finally, Mr. Covington testified that he occasionally smokes marijuana with friends. He says it helps him with his back pain, which began when he accidentally fell on his back while working in retail. Mr. Covington now uses a back brace given to him by the Veterans Affairs Hospital. The back brace has helped him alleviate some of the pain.

**The ALJ's Decision**

Initially, the ALJ found that Mr. Covington met the insured-status requirements of the Act through June 30, 2013. At step one of the sequential evaluation process, the ALJ found that Mr. Covington had not engaged in substantial gainful activity since his

alleged onset date. At step two, the ALJ found that Mr. Covington had the following severe impairments: degenerative disc disease, vision problems, depression, PTSD, and borderline personality disorder.

At step three, the ALJ found that Mr. Covington did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. He found that Mr. Covington's degenerative disc disease and vision disorder lacked sufficient evidence to satisfy the listing requirements. Regarding Mr. Covington's mental disorders, the ALJ considered whether the "paragraph B" severity criteria were satisfied. The ALJ found that Mr. Covington had mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.

For the purposes of steps four and five, the ALJ determined Mr. Covington's residual functional capacity. He found that Mr. Covington has the RFC to perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c), except limited to lifting and carrying fifty pounds occasionally and twenty-five pounds frequently, and standing and walking for six hours of an eight-hour work day; and sitting for six hours of an eight-hour workday. Mr. Covington was limited to work that does not involve unprotected heights, being around dangerous moving machinery, operating a motor vehicle, or working around open bodies of water or open flame. He also found that Mr. Covington is limited to work that is simple and repetitive in nature, and that does not require more than occasional interaction with the public, co-workers, or supervisors.

11

At step four, the ALJ determined that Mr. Covington was unable to perform any of his past relevant work. At step five, the ALJ determined that, considering Mr. Covington's age, education, work experience, and RFC, there are jobs that exist in significant number in the national economy that Mr. Covington can perform and, therefore, he is not disabled.

## Discussion

Mr. Covington contends that the ALJ committed four errors warranting reversal of the Commissioner's decision.

**1. Listing Satisfaction.** Mr. Covington argues that the ALJ committed reversible error when he determined that Mr. Covington's major depression and anxiety disorder did not meet or medically equal Listing 12.04, affective disorders. He posits presents three arguments why the ALJ's listings analysis was erroneous.

First, Mr. Covington states that the evidence on record was sufficient to find that listing 12.04 was met. However, his argument is merely a restatement of the evidence presented in the record. He offers no analysis to demonstrate how the evidence proves that his disorders met or medically equaled listing 12.04. Instead, he makes an assertion about the sufficiency of evidence and references decisions in which the Court of Appeals for the Seventh Circuit found that evidence was sufficient for a disability finding. Thus, the Court finds that Mr. Covington's skeletal claim is forfeited. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (finding that "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim").

Second, Mr. Covington states that the ALJ ignored or arbitrarily rejected the Mental Residual Functional Capacity Assessment completed by his treating psychiatrist and psychotherapist, Dr. Bhagar and Mr. Bower. However, a review of the record makes clear that the ALJ did neither. He considered the June 2012 assessments, as shown by his direct discussion of them in his decision. (R. 18). Because an ALJ's decision should be read as a whole, *Fox v. Heckler*, 776 F.2d 738, 743 n. 2 (7th Cir. 1985), it is of no consequence that the ALJ's explanation was located in his RFC discussion, rather than under his step-three heading. Thus, it cannot be found that the ALJ ignored the assessments when he explicitly addressed his reasons for giving them little weight.

Neither was the ALJ's evaluation arbitrary. The ALJ based his decision to give little weight to the opinions of Dr. Bhagar and Mr. Bower on other inconsistent evidence. The ALJ wrote that treatment notes from the Veterans Affairs Hospital showed Mr. Covington's medication and group therapy were helping. (R. 17). Furthermore, he found that findings in the assessments were inconsistent with Mr. Covington's own testimony at the hearing, *e.g.*, Mr. Covington reported daily activities that demonstrated his ability to sustain simple and repetitive tasks. The ALJ's decision to assign little weight to the June 2012 assessments was not arbitrary.

Finally, Mr. Covington faults the ALJ for failing to give controlling weight to the opinion of his treating sources, specifically the June 2012 assessments by Dr. Bhagar and Mr. Bower. "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and

13

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R § 404.1527(c)(2). *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). The Seventh Circuit has affirmed an ALJ's decision not to assign a treating physician's opinion controlling weight "so long as the ALJ 'minimally articulate[d]' his reasons—a very deferential standard that [the Seventh Circuit has], in fact, deemed 'lax.'" *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). Here, the ALJ articulated his reasons for not giving controlling weight to the opinion of Mr. Covington's treating sources. Dr. Bhagar and Mr. Bower's June 2012 assessments declared that Mr. Covington was "not likely to sustain or maintain any substantial employment." These treating opinions were in conflict with other substantial evidence that tended to show that Mr. Covington was capable of sustaining at least simple and repetitive tasks. As discussed above, the ALJ chose to give the treating sources' opinions less-than-controlling weight because other substantial evidence was inconsistent with their findings. The ALJ had no obligation to mechanically view a treating physician's opinion as prevailing. *Peabody Coal Co. v. McCandless*, 255 F.3d 465, 469 (7th Cir. 2001). Here, the ALJ adaquetly articulated his reasons for not assigning controlling weight to the opinion of Dr. Bhagar and Mr. Bower.

  **2. Calling a Medical Advisor.** Mr. Covington also argues that the ALJ committed reversible error because he failed to call a medical expert to testify regarding whether Mr. Covington's impairments medically equaled a listing. Specifically, he argues that a medical expert should have been called because the state-agency reviewing physicians,

14

whose opinions the ALJ credited, did not consider the June 2012 assessments of Dr. Bhagar and Mr. Bower when they rendered their opinions. Those assessments entered the record after the state agency's initial and reconsideration reviews. Mr. Covington claims that, presumably, the agency physicians "would have reasonably determined he was totally disabled" if they had had an opportunity to review the assessments. Mr. Covington, however, does not attempt to explain how that evidence would have changed the opinions of the state-agency-reviewing physicians.

As has been discussed above, the ALJ's determination to give Dr. Bhagar's and Mr. Bower's June 2012 assessments little weight was not erroneous. Furthermore, the ALJ gave consideration to other evidence post-dating the reviewing doctors' opinions, (R. 17, 539-40, 549, 553, 559-60). Unless the record is insufficient, which in this case it was not, there is no need for an ALJ to seek additional medical opinions. *See Skinner v. Astrue*, 478 F.3d 836, 844 (7th. Cir. 2007). The Court agrees with the Commissioner that Mr. Covington presents no convincing reason why the ALJ was required to obtain additional medical opinion on equivalence.

  **3. Credibility Determination.** Next, Mr. Covington argues that the ALJ's credibility determination was patently erroneous because it was irrational and backwards. An ALJ's credibility finding is entitled to great deference and should not be disturbed unless patently wrong. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). A court "merely examine[s] whether the ALJ's determination was reasoned and

15

supported." *Elder*, 529 F.3d at 413. The ALJ's determination was reasonably determined and supported by sufficient evidence.

Mr. Covington cites decisions of this Court and the Seventh Circuit remanding cases because of erroneous credibility determinations, but the Court agrees with the Commissioner's contention that Mr. Covington has misrepresented these precedents. In each of the cases, the ALJs used boilerplate language and gave no other reasoning for their credibility findings. Thus, the question becomes, not whether the ALJ used template language, but whether he supported his finding with a thorough and reasonable analysis. Here, although the ALJ used template language, he gave sufficient reasons for his determination and articulated a well-reasoned analysis. For example, the ALJ discussed Mr. Covington's ability to perform activities that were contrary to his alleged limitations and the ALJ noted the effectiveness of received treatment. The ALJ also gave great weight to medical-source opinions that conflict with Mr. Covington's allegations. The Seventh Circuit has held that an ALJ "is free to discount the applicant's testimony on the basis of other evidence . . . ." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). The Court also noted that "[a]pplicants for disability benefits have an incentive to exaggerate their symptoms . . . ." *Id.* This Court makes no determination as to the truthfulness of Mr. Covington's claims, but finds no reason to question the ALJ's decision to discount Mr. Covington's testimony. Thus, the ALJ's credibility determination was not patently erroneous.

**4. Step Five Determination.** Finally, Mr. Covington argues that substantial evidence fails to support the ALJ's step-five determination. Specifically, he contends that the ALJ's RFC given to the vocational expert did not accurately describe Mr. Covington's impairments because it failed to account for the claimant's deficiencies in social functioning and concentration, persistence, or pace. At best, his argument is merely conclusory. Mr. Covington provides no explanation or the slightest bit of support for his argument. With nothing else, the Court find that his argument is forfeited.

Furthermore, even if Mr. Covington would have articulated his argument, the Court finds that substantial evidence in the record supports the ALJ's step-five finding. Dr. Pressner, relying on Dr. Henry's conductive exam, opined that Mr. Covington could perform simple, unskilled tasks in a work setting. The ALJ relied on this opinion. Also, Dr. Bhagar did not note any specific limitations or restrictions related to Mr. Covington's mental-health issues in his status opinion of June 12, 2012. His bare conclusion that Mr. Covington was unlikely to sustain employment lacked the specific functional limitations with regard to performing sustained work that would have been sufficient for the ALJ to rely on in making his step-five determination. Because Mr. Covington failed to articulate his argument and the ALJ relied on sufficient evident in his step-five determination, Mr. Covington has failed to show error.

## Conclusion

For the reasons explained above, this magistrate judge **RECOMMENDS** that the Commissioner's decision denying Mr. Covington's application for disability benefits and a declaration of a period of disability be **AFFIRMED**.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:** 08/08/2014

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.