UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFFREY A. COVINGTON, | ) |
| Plaintiff, | ) |
| vs. | ) 1:13-cv-00363-SEB-DKL |
| CAROLYN W. COLVIN Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION**

This is an action for judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") finding Plaintiff Jeffrey A. Covington not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d), 1381a, & 1382(a). This cause is before the Court on Plaintiff's objections to the Magistrate Judge's Report and Recommendation. For the reasons set forth below, we OVERRULE Plaintiff's objections and ADOPT the Magistrate Judge's Report and Recommendation, affirming the decision of the Commissioner.

**Factual and Procedural Background**

**Facts**

Plaintiff Jeffrey A. Covington is a 53-year resident of Indiana. Covington seeks Social Security benefits on the basis of a number of physical, psychiatric, and emotional impairments.

Covington reports a troubled history dating to his early childhood. He spent a portion of his early years in children's foster homes, and suffered molestation beginning at the age of five

1

or six. Later, he spent a short time in the United States Army, but was discharged after only 10 months. While in the Army, he was hospitalized for four days at a U.S. facility in Germany after a suicide attempt. R. 30–31.[1] He reports that he suffers post-traumatic stress disorder stemming from his childhood abuse, and he recounts experiencing depression and suicidal ideation from an early age. *Id.*

Before his alleged onset date in 2011, Covington held several jobs.[2] He worked as a laborer for Gorilla Plastic and Rubber Group, a stocker at several retail outlets, and as a cook at Church's Chicken and, most recently, Long John Silver's. R&R 6.[3]

Covington suffers from physical impairments affecting his back and his vision. He traces his back pain to an accident more than ten years ago. Covington received treatment in 2010 and 2011 from Veterans Administration hospitals for back pain, and a September 2010 x-ray of his thoracic spine revealed mild degenerative disc disease, but with no "acute" bone abnormalities. R. 16 (citing R. 138). However, an examination in October 2011 revealed that he had normal gait and posture, no spinal tenderness or muscle spasms, and normal range of motion in his joints. R. 16–17. After he continued to complain of back pain on subsequent VA visits, he received a brace, which provided some relief. *Id.* at 17. In June 2012, he received a Tramadol prescription for back pain and lumbar tenderness. *Id.* (citing R. 57, 39, 49). With respect to his eyes, Covington complained at an eye examination in April 2011 that he lacked depth perception in his right field of vision when he was tired; he received a prescription for new glasses with

---

[1] Citations to the Administrative Record ("R.") refer to the electronic transcript of the record filed at Docket No. 14.
[2] There is no indication from the record that Covington has any post-secondary education.
[3] Citations to "R&R" refer to Magistrate Judge LaRue's Report and Recommendation [Docket No. 28], filed on August 8, 2014.

2

"transitions lenses." *Id.* at 16. On a later eye exam, he was diagnosed with strabismus of the right eye. *Id.* at 17.[4]

Covington also suffers from psychological and emotional impairments. In 2008, he began receiving treatment at a Veterans Administration hospital. An examination in March 2008 resulted in a diagnosis of adjustment disorder with anxiety and major depressive affective disorder. R. 341. After later visits for treatment in 2008 and 2009, he was diagnosed with mood disorder, post-traumatic stress disorder (PTSD), and depressive disorder. R. 331, 340.

On July 27, 2009, Covington was hospitalized for one night, reporting that he had had suicidal thoughts and depression. R. 343–347. On his admission, his Global Assessment of Functioning (GAF) score was listed at 30.[5] He reported that he had had numerous suicidal thoughts in the preceding weeks and complained of auditory hallucinations. Docket No. 19 at 4. On his discharge, Covington was prescribed Seroquel, an antidepressant, to combat his depressive moods and paranoia. *Id.* at 5.

In December 2010, Dr. Harpriya Bhagar performed a psychiatric evaluation of Covington. R. 406–407. She confirmed the depression and PTSD diagnoses, and noted the presence of borderline personality traits. She continued his Seroquel prescription as well as his prescriptions for two other PTSD and anxiety medications. *Id.* Dr. Bhagar also referred him to a social worker, Richard Bower, for the provision of continuing care. *Id.*

---

[4] As Defendant notes, Plaintiff has not objected to the ALJ's analysis of his physical impairments, focusing his arguments on the putative failure of the ALJ—and subsequently Magistrate Judge LaRue—to give proper consideration to his depression, PTSD, and other mental/emotional impairments.

[5] As Plaintiff explains, a GAF score of 30 is defined in the Diagnostic and Statistical Manual, fourth edition (DSM) as follows: "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends). Docket No. 19 at 3 n.1.

In 2011 and 2012, Covington continued to receive VA medical treatment, and he participated in outpatient therapy and life skills counseling programs. *See* R. 297–410. At these sessions, he often reported progress and good moods; he did not report suicidal ideation during this period. R. 349–350, 358, 387–388, 395, 406. In October 2011, Dr. Herbert Henry performed a mental status examination on Covington. R. 456–462. Although Covington reported his history of PTSD, depression, and suicide attempts, Dr. Henry found him to demonstrate full orientation, normal affect, clear speech, adequate judgment, and good memory. R. 459–461. Henry assessed Covington with a GAF score of 63. R. 462.[6]

State reviewing consultant Joseph Pressner completed a psychiatric assessment of Covington in November 2011. He opined that Covington had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration.[7] R. 473. With regard to Covington's capacity to engage in work, he opined that Covington retained the ability to perform simple, unskilled tasks in a work setting that did not involve intense interactions with others. R. 479. This assessment was later echoed by another agency reviewing consultant in January 2012. R. 531.

Covington's own treating physician and social worker, Dr. Harpriya Bhagar and Richard Bower, respectively, also completed functional evaluation and mental residual functional capacity questionnaires in June 2012. Dr. Bhagar opined that Covington was "not likely to sustain or maintain any substantial employment." R. 534. Bower reported that Covington had

---

[6] GAF scores in the range of 61 to 70 indicate some mild symptoms or difficulty in social, occupational, or school functioning, but are consistent with a patient who is "generally functioning pretty well." Docket No. 26 at 3 n.3.

[7] Pressner's language tracks the depression disability criteria for Social Security Listing 12.04 (see below).

marked limitations with social interaction, adaptation, sustained concentration and persistence, and making simple work-related decisions. R. 535–536; Docket No. 19 at 6.

## Procedural History

This is Covington's second application for Social Security benefits. He filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in December 2008; his applications were denied initially, upon reconsideration, and finally by an ALJ on May 23, 2011. Docket No. 26 at 2 n.1. Covington filed a civil suit, and this Court affirmed the Commissioner's decision denying him benefits. *See Covington v. Astrue,* 2013 WL 4763574 (S.D. Ind. Sept. 4, 2013).

Covington initiated his current claim on July 7, 2011, when he applied for DIB and SSI benefits, alleging a disability onset date of May 24, 2011. The Social Security Administration denied his claim initially on November 9, 2011, and again upon reconsideration on February 1, 2012. Covington then requested a hearing, which Administrative Law Judge (ALJ) Albert J. Velasquez conducted in Indianapolis on August 24, 2012.

The ALJ found on August 29, 2012 that Covington was not entitled to benefits. R. 11–21. The ALJ's decision proceeded through the five-step Social Security analysis, and began by finding that Covington had not engaged in substantial gainful activity since his onset date (Step One) and that he had five severe impairments: degenerative disc disease, vision problems, depression, PTSD, and borderline personality disorder (Step Two). R&R 10–11.

At Step Three of the analysis, the ALJ determined whether Covington met any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. He considered, in particular, whether Covington met the criteria of listings 12.04 (affective disorders), 12.06 (anxiety disorders), or 12.08 (personality disorders). He concluded that Covington met none of

these listings because he could satisfy neither "Part B" nor "Part C" of any of them: he had only mild restrictions in the activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. R. 14–15. Further, the ALJ found that he had suffered no episodes of decompensation of extended duration. *Id. See* R&R 11.

The ALJ then determined Covington's residual functional capacity (RFC). He found that Covington had the capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c), but with additional limitations on his ability to lift and carry weight and the stipulation that he could stand or walk for a maximum six hours in an eight-hour day and sit for a maximum of six hours in an eight-hour day. R. 15; R&R 11. Using this RFC, he then assessed Covington's ability to perform his own past work (Step Four) and jobs within the national and local economy (Step Five). The ALJ determined that Covington could not perform any of his own past work; he found, however, that there were jobs in the national economy that he could perform, given his RFC, age, education, and work experience. R. 19–20. The Commissioner of Social Security affirmed the ALJ's determination that Covington was not disabled.

Covington now seeks review of the Commissioner's decision in this Court. Covington argued that the ALJ erred in the following ways: (1) failing to find that Covington's impairments met the criteria for Listing 12.04, in part because he "arbitrarily" rejected the functional capacity assessments submitted by Bhagar and Bower; (2) failing to summon a medical advisor to testify as to whether Covington's combined impairments equaled any Listings; (3) violating Social Security Ruling 96-7p in making his determination of Covington's credibility in describing his symptoms; and (4) making a Step Five determination that was not supported by substantial evidence. *See* Docket No. 19 at 12–24.

6

Magistrate Judge LaRue issued a Report and Recommendation on August 8, 2014, rejecting Covington's arguments and recommending that the Court affirm the Commissioner's decision that Covington is not entitled to DIB and SSI benefits. *See* R&R. Covington filed timely objections to the Report and Recommendation on August 22, 2014. Docket No. 29.

## Legal Analysis

### Standard of Review

We review the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Rice v. Barnhart,* 384 F.3d 363, 368–369 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). In our review of the ALJ's decision, we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner." *Lopez,* 336 F.3d at 539. However, the ALJ's decision must be based upon consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ must "build an accurate and logical bridge" from the evidence in the record to his or her final conclusion. *Dixon*, 270 F.3d at 1176. We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue,* 671 F.3d 629, 632 (7th Cir. 2011).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo,* determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate

decision to adopt, reject, or modify" the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009).

## Discussion

Plaintiff raises two objections to the Report and Recommendation: one to the propriety of Judge LaRue's participation in the matter, and one to the substance of the Report and Recommendation. We address these objections in turn, concluding that neither is meritorious.

### I. Magistrate Judge LaRue's failure to recuse

Plaintiff contends that Magistrate Judge LaRue should have recused herself from this case, and that her failure to do so violates 28 U.S.C. § 455(a) and requires us to set aside her Report and Recommendation and assign the matter to another magistrate. Docket No. 29 at 1.

Title 28, United States Code, Section 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Plaintiff believes that because Judge LaRue ruled against Covington in affirming the Commissioner's denial his first application for benefits in 2013, *see Covington v. Astrue,* 2013 WL 4763574 (S.D. Ind. Sept. 4, 2013) (LaRue, M.J.), her "impartiality might reasonably be questioned." Docket No. 29 at 1. Plaintiff elaborates: "Her second decision in favor of the defendant [the present Report and Recommendation] might well have been influenced by her fairly recent decision in favor of the defendant. A judge's duty to recuse herself does not require bias in fact, but also applies because of a mere appearance of bias." *Id.* at 1–2.

Plaintiff cites no facts supporting the notion that Judge LaRue was biased against him other than her ruling denying him benefits in a previous action. Seventh Circuit precedent establishes that such a speculative theory of bias is unsupportable. *See Reed v. Lincare, Inc.*, 524 F. App'x 261, 262 (7th Cir. 2013) ("Reed's only purported evidence of bias is that the same judge had ruled against him in several other cases . . . which in itself is insufficient to call into question the judge's impartiality."). *See also Collins v. Illinois,* 554 F.3d 693, 697 (7th Cir. 2009); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1025 (7th Cir. 2000). We emphatically reject Plaintiff's baseless imputation of bias or impropriety to Magistrate Judge LaRue, and we therefore turn to consider the merits of the Magistrate's Report and Recommendation, to which Plaintiff has raised only one specific objection.

## II.     The ALJ's determination with respect to Listing 12.04

Plaintiff argues that the ALJ "arbitrarily and erroneously" rejected Covington's June 2012 functional capacity reports from Dr. Bhagar and his social worker Richard Bower, and consequently erred in finding that Covington did not meet the criteria of Listing 12.04. Docket No. 29 at 2–3.

### 1. ALJ's treatment of the Bhagar and Bower opinions

The reports that Plaintiff cites—both submitted by Covington's care providers—do state opinions broadly supportive of his application. Dr. Bhagar diagnosed Covington with PTSD, depression, major depressive disorder, and "borderline personality traits." She opined that Covington "is not likely to attain or maintain any substantial employment." R. 534. Bower's responses to the RFC questionnaire stated that Covington's functioning was "markedly limited" in the following areas: the ability to maintain attention and concentration for extended periods, the ability to work in coordination with or proximity to others without being distracted by them,

9

the ability to make simple work-related decisions, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to maintain socially appropriate behavior and to adhere to basic standards of cleanliness, and the ability to respond appropriately to changes in the work setting. R. 536.

According to Plaintiff, the ALJ made a number of errors in declining to credit these opinions:

> [T]he ALJ ignored the Mental [RFC] assessment's marked restrictions in eight specific vocationally relevant functions. The ALJ rejected the Mental [RFC] Assessment because it was supposedly "without substantial support from the other evidence of record, which obviously renders it less persuasive." The ALJ does not specify any of this "other evidence of record." The ALJ concluded his rejection with his erroneous layperson's opinion that "the claimant's daily and social activities demonstrate the ability to sustain simple and repetitive tasks." The ALJ is not qualified to make this psychiatric determination.

Docket No. 29 at 3. Plaintiff argues that the magistrate repeated the ALJ's errors in formulating her Report and Recommendation. *Id.* at 4.

Plaintiff mischaracterizes the ALJ's decision. The controversy between the parties centers on "Paragraph B" of Listing 12.04, which requires a claimant to prove that he suffers two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04B. In his decision, the ALJ found that Covington did not exhibit "marked" deficiencies in any of these four areas, and he cited portions of the medical record or Covington's own testimony in support of these determinations. Specifically, he found that Covington had "mild" restriction in activities of daily living; in support of this determination, he pointed to Covington's own statements that he is able to "cook, clean, do laundry and yard work and shop and he enjoys reading and watching television." R. 15. Although Covington reported being "afraid" of driving, the ALJ cited Dr. Henry's report that Covington stated he is able to go out alone, and chooses to walk or take public transportation instead of driving. *Id.* (citing Ex. 4E (Henry Report)). The ALJ found that Covington had only "moderate" difficulties in social functioning, citing contradictions within Covington's own testimony: while he stated he does not like to be around people, he also reported having several friends and that he visits, and socializes with, his neighbors. *Id.* Citing a mental status examination in October 2011 that showed good cognitive function, the ALJ found that Covington had only "moderate" difficulties with concentration, persistence, or pace; he thus weighed the results of the October 2011 mental status examination (Ex. 3F) over Covington's own statement to Dr. Henry that he was poor at handling stress or changes in routine (Ex. 4E). *Id.* at 16. Finally, he found that Covington had suffered no episodes of decompensation of extended duration, noting that there was no evidence in the record of such episodes. *Id.*

Plaintiff's claims to the contrary notwithstanding, the ALJ did explain why he chose to give less weight to the reports submitted by Dr. Bhagar and Richard Bower.[8] First, he noted that

---

[8] The ALJ discussed his opinions with respect to the credibility of the Bhagar and Bower reports under the heading of his RFC analysis rather than his Step Three analysis. R. 19. We agree with the magistrate that this is not reversible error. An ALJ's decision is to be read as a whole, *see Fox v. Heckler,* 776 F.2d 738, 743 n.2 (7th Cir. 1985), and the ALJ's opinions with respect to the credibility of those reports as evidence of Covington's medically determinable impairments

11

the RFC reports submitted by Bower and Dr. Bhagar "reported no specific restrictions due to mental health issues." R. 19 (citing Ex. 10F at 2, 3–6). Bower filled out a questionnaire by stating that Covington had "marked" restrictions in a number of areas, but he did not support his responses with reference to the record. R. 535–537. He apparently based his conclusion that Covington's emotional difficulties will "prevent any future sustained substantial employment"— a conclusion he expressed at the end of the questionnaire—on his own opinions with regard to Covington's history of attempted self-harm, social adjustment difficulties, and "concentration and persistence" problems; none of these assertions, however, cite any evidence. *See* R. 537–538.[9] For her part, Dr. Bhagar stated that "Jeff [Covington] is not likely to [maintain] any substantial employment," but on the very next line of her one-page opinion, when prompted to explain any "specific restrictions with regard to performing sustained work activities," she responded that there were "none related to mental health issues"—"though [Covington] likely will not sustain employment." R. 534. Where a treating physician simply asserts that a patient cannot work because of mental health issues but explicitly declines to state on what basis she asserts that opinion, an ALJ is entitled to give the opinion little weight. *See Gildon v. Astrue,* 260 F. App'x 927, 929 (7th Cir. 2008) ("An ALJ is not required to accept a doctor's opinion if it is 'brief, conclusory, and inadequately supported by the evidence.'") (citing *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)).

---

apply with as much force to Step 3 as they do to Step 4. *See Rice v. Barnhart,* 384 F.3d 363, 370 (7th Cir. 2004).
[9] As a social worker, Bower's opinions are entitled to consideration by the ALJ, but do not qualify as the opinions of a "treating physician" that are to be accorded *controlling* weight under certain circumstances. *See* 20 C.F.R. § 404.1502 (defining a "treating source"); 20 C.F.R. § 404.1513(d)(1) (defining "other sources"); *Cole v. Astrue,* 661 F.3d 931, 939 (6th Cir. 2011) (noting that a social worker, while not a "treating source," is an "other source" whose opinion may be entitled to consideration due to expertise and long-term relationship with the claimant).

Second, the ALJ stated: "I give their opinions little weight as their opinions are without substantial support from the other evidence of record, which obviously renders it [sic] less persuasive. Specifically, the claimant's daily and social activities demonstrate the ability to sustain simple and repetitive tasks." *Id.* The ALJ went on to contrast the Bhagar and Bower reports to the evidence he had already discussed—taken from Covington's own testimony and the opinions of Dr. Henry and Dr. Pressner—regarding Covington's performance of a number of activities of daily life and his engagement in social activities such as socializing with friends and neighbors and selling scrap metal for spending money. *Id.*

We review an ALJ's determination of the weight to accord medical source opinions with a good deal of deference. The ALJ is required to accord treating physician opinion controlling weight only if it is (1) supported by medical findings and (2) consistent with substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004). If an ALJ elects not to give a treating physician's opinion controlling weight, the Social Security regulations provide that several factors should guide his determination of what weight the treating physician's opinion should have, if any. *See* 20 C.F.R. § 404.1527(c)(1)–(6); *Campbell v. Astrue,* 627 F.3d 299, 308 (7th Cir. 2010). "Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion." *Campbell,* 627 F.3d at 308 (citing *Larson v. Astrue,* 615 F.3d 744, 749 (7th Cir. 2010)).

Here, the ALJ determined that the opinions of Bower and Dr. Bhagar were neither supported by medical findings nor consistent with the other evidence in the record and were thus entitled to "little weight"; we allow the ALJ's decision to stand so long as the ALJ "'minimally articulate[d]' his reasoning—a very deferential standard that we have, in fact, deemed 'lax.'"

*Elder v. Astrue,* 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue,* 516 F.3d 539, 545 (7th Cir. 2008)). In *Henke v. Astrue,* 498 F. App'x 636 (7th Cir. 2010), the Seventh Circuit addressed an ALJ decision that had rejected a treating physician's opinion because the physician's "sweeping conclusions lacked support in his own treatment notes" and because the physician's opinion was inconsistent with other evidence in the record. 498 F. App'x at 640. The ALJ explained himself on similar grounds here, and we find his explanation adequate. Neither Bower nor Dr. Bhagar cited medical evidence in support of their opinions, and an ALJ is entitled to discount where the source "did not explain his opinion and his treatment notes do not clarify the doctor's reasoning." *See Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010).

Although the ALJ did not explicitly engage in the six-factor analysis set forth under 20 C.F.R. § 400.1527(c) in determining what weight to give non-controlling medical source opinions, he at least minimally articulated his grounds for according the opinions little weight— that they were conclusory, lacking support in the sources' own notes, and that they were in conflict with the rest of the record. *See Henke,* 498 F. App'x at 640 n.3 (finding that an ALJ had done "enough" to explain his decision to discount treating physician opinion when he had noted that the opinions were not supported by objective evidence and were inconsistent with other parts of the medical record).[10]

---

[10] Plaintiff misunderstands the nature of the ALJ's review of the evidence when he charges that the ALJ offered an "erroneous layperson's opinion" that the "claimant's daily and social activities demonstrate the ability to sustain simple and repetitive tasks." Docket No. 29 at 3 (quoting R. 19). An ALJ is required to weigh the credibility of evidence by examining it in light of the other opinion and objective evidence in the record. When he does so, he is not offering a "layperson's" medical opinion or improperly "playing doctor." *See Henke,* 498 F. App'x at 640 (explaining that "[T]he ALJ did not err or improperly 'play doctor' by examining the medical record and determining that [a treating physician's] conclusions were unsupported by his own notes or contradicted by other medical evidence").

14

The ALJ justified his finding that Covington did not meet the criteria for Listing 12.04 by explaining that Covington's claims regarding the severity of the impact of his impairments were contradicted or undermined by elements of his own hearing testimony and portions of his medical record. This determination is supported by substantial evidence in the record. *See* R. 44–59, 77 (Covington's hearing testimony); R. 226–230 (Covington's wife's testimony); R. 239–242 (Covington's SSA "function report"); R. 349–350, 358, 384, 387–388, 395, 406, 459–461 (therapy notes); R. 539–540, 549, 553, 559–560 (VA Medical Center treatment notes). The ALJ's reasoning from evidence is thus creditable, and his proffered explanation is one that "a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). As we have discussed, he did not ignore or "arbitrarily" discount probative evidence—he explained his decision to accord lesser weight to the opinions of Bhagar and Bower in a manner that satisfies our deferential standard of review.

**2. Plaintiff's argument that the record supports a finding of disability under Listing 12.04**

In addition to challenging the ALJ's reasoning and his putative failure to give proper consideration to his treating care provider testimony, Plaintiff's appeal of the Commissioner's final decision also contends that the evidence on record was sufficient to support a finding that Covington met the criteria for Listing 12.04 and thus should be considered *per se* disabled. Docket No. 19 at 12–13. In her Report and Recommendation, Magistrate Judge LaRue opined that this argument was "merely a restatement of the evidence presented in the record" and offered "no analysis to demonstrate how the evidence proves that his disorders met or medically equaled listing 12.04." R&R 12. On this basis, she found Plaintiff's "skeletal" claim to be forfeited. *Id.* (citing *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) (finding that "[a]

15

skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.")). In his brief in opposition to the Report and Recommendation, Plaintiff remonstrates that he had, in fact, "proved" that the Listing requirements were met "with citations to the specific evidence in the record which proved these elements." Docket No. 29 at 4.

We agree fully with the Magistrate's characterization of Plaintiff's argument. In his brief, Plaintiff does provide citations to the record supporting the contention that Covington met the requirements of Part A of Listing 12.04. Docket No. 19 at 12–13. With respect to Part B, however, Plaintiff merely asserts that "Listing 12.04B was proved by the 6-21-12 Mental functional Capacity Assessment" submitted by Bower and Dr. Bhagar.[11] *Id.* at 13. The Magistrate was more than justified in calling the argument "skeletal"; it is nothing more than a restatement of Plaintiff's belief that the ALJ should have looked to Covington's treating care providers rather than to the other sources on which he ultimately did rely. We have already addressed the ALJ's reasonable decision to give other sources rather than the Bower and Dr. Bhagar reports predominant weight in addressing the requirements of Listing 12.04B. Because Plaintiff offers no other basis for his contention that Covington met the listing requirements, we can follow the Magistrate's lead in setting this argument aside.

## **Conclusion**

We find that neither of Plaintiff's objections to the Magistrate Judge's Report and Recommendation has merit. There is no reason to conclude that Magistrate Judge LaRue should have been recused from the matter, and the ALJ's conclusions with respect to Listing 12.04—specifically, his decision to grant little weight to the opinions of Dr. Bhagar and Richard

---

[11] For a claimant to qualify as disabled under Listing 12.04, he or she must satisfy both Part A and either Part B or Part C. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Bower—were both reasonable and adequately explained with reference to the record. Accordingly, the Plaintiff's objections to the Magistrate Judge's well-reasoned Report are OVERRULED and we ADOPT the recommendations set forth in the Magistrate Judge's Report and Recommendation, deferring to those conclusions reached by the Magistrate Judge to which Plaintiff did not specifically object. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009).

    IT IS SO ORDERED.

Date: 9/29/2014

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov